UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GREAT NORTHERN INSURANCE COMPANY, A/S/O JEFFREY S. JACOB AND MICHEL JACOB<br>Plaintiff,<br><br>v.<br><br>5K DEVELOPMENT, LLC,<br>Defendant and Third Party/Apportionment Plaintiff,<br><br>v.<br><br>DIFULVIO CONSTRUCTION, LLC,<br>Third Party/Apportionment Defendant. | No. 3:16-cv-01359 (MPS) |

## RULING ON MOTIONS FOR SUMMARY JUDGMENT

### I. Introduction

Great Northern Insurance Company ("Great Northern") brings this suit as subrogee of Jeffrey and Michel Jacob, the owners of a home at 687 Smith Ridge Road in New Canaan, Connecticut that was damaged during a renovation. Great Northern alleges one count of negligence against 5K Development, LLC ("5K Development"), a home renovation company, for the partial collapse of the home's pre-existing foundation during the excavation of the foundation for a new addition. (ECF No. 1.) 5K Development in turn brought an apportionment complaint and third-party claim for indemnification against excavation company DiFulvio Construction, LLC ("DiFulvio") for its role in the collapse. (ECF No. 56.) 5K Development and DiFulvio now move for summary judgment against Great Northern on the grounds that Great Northern failed to disclose experts necessary to prove its claim. (*See* ECF No. 52 at 5–7, ECF No. 54-2 at 4–7.) 5K Development also argues that it owed no duty to the Jacobs, because

DiFulvio, rather than 5K Development, was responsible for the excavation. (*See* ECF No. 52 at 8–9.) For the following reasons, 5K Development's motion for summary judgment is hereby GRANTED, and DiFulvio's motion for summary judgment is DENIED as moot.

## II.     Preliminary Issues

As a threshold matter, I may consider only a limited body of facts in deciding the motions for summary judgment, because both Great Northern and DiFulvio have failed to comply with D. Conn. Local Rule 56(a).

5K Development supported its motion with a Local Rule 56(a)1 Statement of Facts. (ECF No. 53, Defendant's Local Rule 56(a)(1) Statement ("Def.'s L.R. 56(a)1 Stmt.").) Although Great Northern made a blanket assertion in its opposition brief that "genuine issues of fact exist," it did not identify which facts in 5K Development's 56(a)1 Statement it contests or file a Rule 56(a)2 Statement in support of its opposition. (ECF No. 59 at 2.) Accordingly, the material facts set forth in 5K Development's Rule 56(a)1 Statement are deemed admitted to the extent they are adequately supported by the record. *See* D. Conn. L.R. 56(a)1; *Miron v. Town of Stratford*, 976 F. Supp. 2d 120, 127 (D. Conn. 2013) ("Where a party fails to appropriately deny material facts set forth in the moving party's 56(a)1 statement, and where those facts are supported by evidence in the record, those facts are deemed to be admitted.").

Great Northern did, however, append an exhibit to its memorandum of law to support its assertion that factual disputes exist. (*See* ECF Nos. 59 at 2, 59-2.) While I "may consider other materials in the record" besides the materials specifically cited in the parties' Rule 56(a) statements, Fed. R. Civ. P. 56(c)(3), I choose not to consider this exhibit because Great Northern has not demonstrated its authenticity or otherwise laid a foundation for its admissibility through

an affidavit or otherwise.[1]  *See Parks v. Blanchette*, 144 F. Supp. 3d 282, 292 (D. Conn. 2015) ("In ruling on a motion for summary judgment, a court need only consider admissible evidence.") (citing *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997)).

DiFulvio did file a Rule 56(a)1 Statement in support of its own motion for summary judgment. However, DiFulvio did not support its Rule 56(a)1 Statement with evidence, but instead cites almost exclusively Great Northern's complaint and 5K Development's apportionment complaint. (ECF No. 54-1 (citing ECF Nos. 1, 33).)[2]  *Cf. Welch-Rubin v. Sandals Corp.*, No. 3:03CV481 (MRK), 2004 WL 2472280, at *1 (D. Conn. Oct. 20, 2004) ("[A]llegations in a complaint are not evidence."); *see Jackson v. Fed. Exp.*, 766 F.3d 189, 194 (2d Cir. 2014) ("[T]he district court must ensure that each statement of material fact is supported by record evidence sufficient to satisfy the movant's burden of production even if the statement is unopposed."). Putting aside whether DiFulvio has met its burden as movant, however, 5K Development's third-party and apportionment complaint against DiFulvio is conditioned on whether Great Northern recovers damages on its negligence claim against 5K Development. (ECF No. 56 at ¶¶ 11, 19.) Accordingly, if I grant 5K Development's summary judgment motion, its third-

---

[1] Even if I could properly consider this exhibit, however, I would find that it does not contradict any of 5K Development's evidence set forth in Part III. (*See, e.g.*, ECF No. 59-2 at 6 (observing that the home was "in the preliminary stages of excavations and preparations for the underpinning of the existing foundation system.") In particular, the exhibit's summary identification of 5K Development as the project's "general contractor" (ECF No. 59-2 at 10, 13) does not contradict the specific assertions in 5K Development's affidavit that 5K Development had no contractual relationship with DiFulvio and, more importantly, did not direct or manage its work, nor does Great Northern make any argument to that effect. (ECF No. 53, Exhibit 1, Affidavit of Jay Pirrone ("Pirrone Aff.") at ¶¶ 15, 17.) *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (footnote omitted).

[2] DiFulvio also cites the parties' Rule 26(f) report for Great Northern's failure to disclose expert witnesses. (ECF No. 54-1 at ¶ 5.)

3

party/apportionment complaint against DiFulvio is moot. *See Simmons v. Kaufman 8th Ave. Assocs. of New York*, No. 09 CIV 8502 JSR, 2010 WL 4967837, at *3 (S.D.N.Y. Nov. 30, 2010) ("Since [Defendant's] action against the third-party defendants is premised on [defendant] being held liable for plaintiff's injuries, the entire third-party complaint is moot."); *Davis v. Cumberland Farms, Inc.*, No. 1:10-CV-480 FJS/RFT, 2013 WL 375477, at *8 (N.D.N.Y. Jan. 29, 2013) ("Since the Court has granted [Defendant's] summary judgment motion . . . it further dismisses [Defendant's] third-party complaint as moot."). Because I grant 5K Development's motion for summary judgment, I need not address DiFulvio's motion and simply deny it as moot.

## III. Factual Background

In light of the above, the following facts are taken from 5K Development's Local Rule 56(a)1 Statement and the exhibits and are undisputed unless otherwise noted.

Jeffrey and Michele Jacob owned a home at 687 Smith Ridge Road in New Canaan, Connecticut. (Def.'s L.R. 56(a)1 Stmt. at ¶ 2.) During the summer of 2014, the Jacobs began a renovation project, which included an addition to one side of the home of two floors above grade and a basement below. (*Id.* at ¶¶ 6–7; Pirrone Aff. at ¶¶ 9, 18.) The Jacobs contracted with Jay Pirrone, 5K Development's sole member, for Pirrone and 5K Development to complete "framing and finishing work" in accordance with the renovation plans, which were prepared by a third-party architecture firm. (Def.'s L.R. 56(a)1 Stmt. at ¶¶ 4, 8; Pirrone Aff. at ¶¶ 9, 11, 18.) 5K Development performs home renovations and remodelings in lower Fairfield County. (Pirrone Aff. at ¶ 4.)[3] In connection with the Jacobs renovation, Pirrone never held out himself or 5K

---

[3] 5K Development's Local Rule 56(a)1 statement asserts that 5K Development is "in the business of performing finish carpentry work" (Def.'s L.R. 56(a)1 Stmt. at ¶ 5), but this is not supported by the Pirrone Affidavit or any other record evidence. Similarly, the affidavit does not support the Local Rule 56(a)1 statement's assertion that 5K Development was hired to "assist scheduling of other contractors." (Def.'s L.R. 56(a)1 Stmt. at ¶ 8.) Accordingly, neither of these facts are deemed admitted.

4

Development as being an excavator contractor or mason, or having engineering capabilities with respect to home remodeling, renovations and construction. (Def.'s L.R. 56(a)1 Stmt. at ¶¶ 16, 17; Pirrone Aff. at ¶¶ 6–8.)

The Jacobs did not hire or retain 5K Development to oversee, manage or control excavation work for the renovation project. (Def.'s L.R. 56(a)1 Stmt. at ¶ 9; Pirrone Aff. at ¶ 12.) Rather, the Jacobs directly contracted with DiFulvio to perform the excavation work for the project and paid DiFulvio directly. (Def.'s L.R. 56(a)1 Stmt. at ¶ 12; Pirrone Aff. at ¶ 14.) 5K Development and DiFulvio had no contractual relationship in connection with the renovation project. (Def.'s L.R. 56(a)1 Stmt. at ¶ 15; Pirrone Aff. at ¶ 15.) 5K Development also did not pay DiFulvio for any of its work in connection with the project. (Def.'s L.R. 56(a)1 Stmt. at ¶ 14; Pirrone Aff. at ¶ 16.)

DiFulvio excavated the new basement area for the addition to a depth below the adjacent, pre-existing basement and its foundation. (Def.'s L.R. 56(a)1 Stmt. at ¶ 19; Pirrone Aff. at ¶ 20.) Neither Pirrone nor 5K Development directed or managed DiFulvio's work. (Def.'s L.R. 56(a)1 Stmt. at ¶ 13; Pirrone Aff. at ¶ 17.) During DiFulvio's excavation of the new basement area, the chimney and its foundation on the side of the house being renovated settled and moved. (Def.'s L.R. 56(a)1 Stmt. at ¶ 20; Pirrone Aff. at ¶ 19.)[4] In other words, part of the home's pre-existing foundation collapsed. (Pirrone Aff. at ¶ 19.)

After Great Northern commenced this suit against 5K Development, the parties agreed in their Rule 26(f) report that the deadline for Great Northern to designate all expert witnesses and provide opposing counsel with those witnesses' reports was April 1, 2017. (Def.'s L.R. 56(a)1

---

[4] The Pirrone Affidavit also does not support that the collapse occurred "before [the] foundation footings were installed." (Def.'s L.R. 56(a)1 Stmt. at ¶ 20; *compare* Pirrone Aff. at ¶¶ 19, 20.)

5

Stmt. at ¶ 22; ECF No. 53, Exhibit 2, Affidavit of Kevin S. Coyne, Esquire ("Coyne Aff.") at ¶ 4; *see also* ECF No. 29 (adopting the parties' November 1, 2017 fact discovery deadline).) When 5K Development moved for summary judgment on November 30, 2017, Great Northern had not designated any expert witnesses or provided any expert reports. (Def.'s L.R. 56(a)1 Stmt. at ¶ 23; Coyne Aff. at ¶ 5.)

### IV. Legal Standard

Summary judgment is appropriate only when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In making that determination, a court must view the evidence in the light most favorable to the opposing party." *Tolan v. Cotton,* 134 S. Ct. 1861, 1866 (2014) (internal quotation marks and citations omitted). "A fact is material when it might affect the outcome of the suit under governing law," and "an issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal citations and quotation marks omitted). The moving party bears the burden "of showing that no genuine factual dispute exists . . ., and in assessing the record to determine whether there is a genuine issue as to any material fact, the court is required to resolve all ambiguities and draw all factual inferences" in favor of the non-moving party. *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir. 1995).

### V. Discussion

Under Connecticut law, "[t]he essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury." *Doe v. Saint Francis Hosp. & Med. Ctr.*, 309 Conn. 146, 174 (2013) (quoting *Ryan Transp., Inc. v. M & G Assocs.*, 266 Conn. 520, 525 (2003)). 5K Development argues that it is entitled to summary judgment because Great Northern has not disclosed any experts to prove its negligence claim, and 5K

Development's duties to the Jacobs did not extend to DiFulvio's supposedly tortious conduct. (ECF No. 52 at 5–8.) Great Northern responds that summary judgment is premature because of outstanding discovery issues and, in any event, its negligence claim against 5K Development survives under the doctrine of *res ipsa loquitur*. (ECF No. 59 at 2–3.) I find that summary judgment is not premature, that DiFulvio's performance of the excavation work was beyond the scope of 5K Development's duties to the Jacobs, that Great Northern could not prove negligence in any event because it disclosed no expert, and that *res ipsa loquitur* does not apply. I therefore GRANT 5K Development's motion for summary judgment.

### A. Summary Judgment is Not Premature

Great Northern asserts in its opposition that summary judgment is premature because of third-party motion practice in the case and 5K Development's failure to respond to Great Northern's discovery requests. (ECF No. 59 at 1–2.) 5K Development responds that the dispositive motion deadline of December 1, 2017, was set by the Court, Great Northern has "not explained what discovery is necessary for it to defeat the subject motion for summary judgment," and Great Northern too has failed to comply with 5K Development's discovery requests. (ECF No. 60 at 2.)

Rule 56(d) of the Federal Rules of Civil Procedure permits a court, in the exercise of its discretion, to defer or deny a decision on summary judgment if a "nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition[.]" Fed. R. Civ. P. 56(d). "The affidavit must include the nature of the uncompleted discovery; how the facts sought are reasonably expected to create a genuine issue of material fact; what efforts the affiant has made to obtain those facts; and why those efforts were unsuccessful." *Paddington*

*Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994).[5]  A "bare assertion that the evidence supporting plaintiff's allegations is in the hands of the moving party is insufficient to justify the denial of summary judgment." *Crye Precision LLC v. Duro Textiles*, LLC, 689 Fed. App'x 104, 108 (2d Cir. 2017) (quoting *In re Dana Corp.*, 574 F.3d 129, 149 (2d Cir. 2009)).

Here, Great Northern has submitted "no affidavit or declaration to address any need for additional discovery, and thus is not entitled to relief under Rule 56(d)." *Sacks v. Gandhi Eng'g, Inc.*, 999 F. Supp. 2d 629, 645 (S.D.N.Y. 2014).  Great Northern's "reference . . . to the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for a Rule 56([d]) affidavit . . ., and the failure to file an affidavit under Rule 56([d]) is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." *Paddington Partners*, 34 F.3d at 1137 (citing *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 926 (2d Cir. 1985)).  Moreover, as 5K Development correctly notes, Great Northern has not identified what specific discovery is outstanding, how that discovery will create a genuine dispute of material fact, or its prior efforts to obtain that discovery. While the Court did permit third-party motion practice, the Court did not stay Great Northern's obligation to conduct discovery, and the Court is not aware of any attempt by Great Northern to raise a discovery dispute with the Court before filing its opposition to 5K Development's summary judgment motion.  Nor did Great Northern seek to extend the discovery deadline of November 1, 2017 – which the Court set at the initial status conference – to allow for further time to conduct discovery.  (ECF No. 29.)  Since Great Northern's bare assertions in an unsworn brief about the need for further discovery are insufficient for the Court to defer decision under Fed. R. Civ. P.

---

[5] Former Rule 56(f) of the Federal Rules of Civil Procedure discussed in *Paddington Partners* has been renumbered as Rule 56(d) without substantive changes.

56(d), and since Great Northern has not otherwise shown that it exercised diligence in prosecuting discovery in this case, I reject the notion that summary judgment is premature and turn to the merits of 5K Development's motion.

<u>B. 5K Development's Duties Did Not Extend to the Excavation</u>

"[A] general contractor is not liable for the torts of its independent subcontractors" unless the general contractor "reserves in his contract general control over the subcontractor or his servants, or over the manner of doing the work, or if he in the progress of the work assumes control or interferes with the work, or if he is under a legal duty to see that the work is properly performed . . . ." *Archambault v. Soneco/Ne., Inc.*, 287 Conn. 20, 53–54 (2008) (quoting *Pelletier v. Sordoni/Skanska Construction Co.*, 264 Conn. 509, 517–18 (2003)) (internal modifications omitted).[6] Where "the evidence on the question as to who had control of the area or instrumentality causing the injury is such that the mind of a fair and reasonable [person] could reach but one conclusion as to the identity of the person exercising control, the question is one for the court . . . ." *Id.* at 54 (quoting *Pelletier v. Sordoni/Skanska Construction Co.*, 286 Conn. 563, 599 (2008)).

The undisputed record makes clear that 5K Development's duties to the Jacobs did not include any responsibility for the excavation that allegedly caused the partial collapse of the foundation. DiFulvio performed all excavation work at 687 Smith Ridge Road, and the foundation collapsed during the excavation. (Def.'s L.R. 56(a) Stmt. ¶¶ 20–21; Pirrone Aff. ¶¶

---

[6] Although, as noted above, the undisputed evidence in the record shows that the Jacobs contracted separately with DiFulvio and thus that 5K Development was not a "general contractor" in the sense that it hired DiFulvio as a subcontractor, that fact only makes it clearer that 5K Development had no duty with respect to the work DiFulvio was hired to perform. In other words, if a general contractor is not liable for the torts of its subcontractor absent specific language in the subcontract reserving control for the general contractor, then an independent contractor that has no contractual relationship with another independent contractor cannot be liable for the latter's torts.

13, 19–20.)  Because it is undisputed that DiFulvio, not 5K Development, committed the supposedly tortious conduct, 5K Development is not responsible for that conduct unless 5K Development exercised control over DiFulvio.  Even under the analogous principles of general contractor liability (*see* note 6, *supra*), 5K Development had no control of DiFulvio, either on paper or in practice.  DuFulvio and 5K Development had no contractual relationship at all—both contractors were independently hired by the Jacobs to do separate work.  (Def.'s L.R. 56(a) Stmt. ¶¶ 8, 12, 15; Pirrone Aff. ¶¶ 11 (5K Development was hired for "framing and finishing work"), 14 (DiFulvio was hired for "excavation work"), 15 (no contractual relationship).)  5K Development did not direct or manage DiFulvio's excavation work, nor did it pay DiFulvio for those services.  (Def.'s L.R. 56(a) Stmt. ¶¶ 13, 14, 21; Pirrone Aff. ¶¶ 16, 17.)  Moreover, because DiFulvio performed all of the excavation work, and 5K Development did not "instruct, oversee, or manage" DiFulvio's excavation work at any time (Def.'s L.R. 56(a) Stmt. ¶ 13), a reasonable person could reach only one conclusion as to who controlled the excavation site—DiFulvio.  The Court thus may properly conclude as a matter of law that 5K Development is not liable to the Jacobs for DiFulvio's allegedly tortious conduct.  Accordingly, Great Northern cannot recover in negligence from 5K Development.

### C.  Great Northern's Failure to Disclose Experts Provides An Independent Basis for Summary Judgment

Even if 5K Development had not shown that it bore no responsibility for the excavation work, I would find that Great Northern's failure to disclose the necessary experts to prove the duty, breach, and causation elements of its negligence claim also warranted summary judgment. (ECF No. 52 at 5–7.)  Under Connecticut law, expert testimony is generally "required only when the question involved goes beyond the field of the ordinary knowledge and experience of the trier of fact." *Brye v. State*, 147 Conn. App. 173, 182 (2013) (citation omitted).  This

requirement applies to issues of duty and breach, as well as causation. *See id.* (applied to breach of standard of care); *Green v. Ensign–Bickford Co.*, 25 Conn. App. 479, 488 (applied to causation), *cert. denied*, 220 Conn. 919 (1991). "Whether expert testimony is required in a particular case" is a legal determination that is made "on a case-by-case basis and its necessity is dependent on whether the issues are of sufficient complexity to warrant the use of the testimony as assistance to the . . . court." *State v. Buhl*, 321 Conn. 688, 700 (2016) (quoting *Johnson v. Commissioner of Correction*, 34 Conn. App. 153, 158 (1994)); *see also Brye*, 147 Conn. App. at 181 (citation omitted). If I conclude that these issues require expert testimony, summary judgment is appropriate, as Great Northern has disclosed no expert.[7] *See Walters v. Howmedica Osteonics Corp.*, 676 F. Supp. 2d 44, 52–55, 57 (D. Conn. 2009) (granting summary judgment where plaintiff failed to disclose expert testimony on the "design and construction of surgical trays" to show duty and breach or that defendant's faulty design caused plaintiff's physical injuries).

This case presents circumstances far closer to those in which Connecticut courts have found expert testimony was required than those in which they have found the issues to fall within the "ordinary knowledge and experience of the trier of fact." *Brye*, 147 Conn. App. at 182. This case presents at least three questions a fact-finder would have to resolve at trial: what standard of care is required when excavating a foundation adjacent to and below the depth of a pre-existing home; whether 5K Development breached that standard of care; and, if so, whether that breach caused the collapse of the pre-existing foundation. (*See* Def.'s 56(a)1 Stmt. at ¶¶ 18–20.)[8] In

---

[7] It is undisputed that Great Northern did not disclose any expert witnesses by the scheduling order's deadline, April 1, 2017, or at any point before 5K Development filed its motion for summary judgment. (Def.'s L.R. 56(a)1 Stmt. ¶¶ 22–23; Coyne Aff. ¶¶ 4–5.)

[8] Though I do not consider it, Great Northern's substantive exhibit actually supports the need for expert testimony on causation, because it documents multiple other potential causes of

*Brye v. State*, the Appellate Court held that the "question of whether it was a breach of the standard of care and, therefore, negligent, for the state to use one-quarter inch thick plywood to cover [a] lighting pit" required expert testimony, because the court found that the average fact-finder would not know whether the plywood would support a person's weight. 147 Conn. App. at 182. Similarly, the Appellate Court held in *Matyas v. Minck* that "[t]he preparation, design and drawing of an engineered septic system require training and technical expertise beyond the ordinary knowledge and experience of jurors and judges" and thus required expert testimony to demonstrate whether an engineer had breached the duty of care in designing a system that crossed onto another property. 37 Conn. App. 321, 327 (1995). The question whether the excavation for a new foundation next to an existing one supporting a home breached the requisite standard of care is more technically complex than whether a plywood board will support a person's weight and about as complex as whether an underground septic system was properly designed. More specifically, whether the excavation was to a proper depth, whether it was properly conducted following a rainstorm, and whether it should have been accompanied by supports or other precautions to protect the existing adjacent foundation are questions that are not so obvious that all of the ordinary laypersons on a jury could answer them based on their experience alone. *Cf. Bader v. United Orthodox Synagogue*, 148 Conn. 449, 454 (Conn. 1961) ("Expert testimony was not required to support the claim of the plaintiff that the absence of a proper or suitable porch railing was a structural defect" where photos of the porch were submitted in evidence); *Mazier v. Signature Pools, Inc.*, 159 Conn. App. 12, 34 (2015) (holding that the fact-finder could determine without expert testimony whether defendant's departure

---

the settling, including the weight of the fireplace, drainage from an existing water filtration system, and rain on the day before the collapse. (*See* ECF No. 59-2 at 7–8.)

12

from the plot plan approved by the town's planning and zoning commission in his placement of a pool constituted negligence). For the same reasons, I would conclude that whether any departure from the applicable standard of care caused the partial collapse of the pre-existing foundation is not a question that the average fact finder would be able to answer from its ordinary experience. *See Canale v. KBE Bldg. Corp.*, No. UWYCV156026262S, 2017 WL 4621399, at *4 (Conn. Super. Ct. Sept. 5, 2017) (holding that expert testimony was required to determine whether architect breached a duty in designing ceiling and whether such breach caused the ceiling to collapse).

Accordingly, because Great Northern has not disclosed any expert to show duty, breach, or causation, it cannot prove its negligence claim against 5K Development, and 5K Development is entitled to summary judgment on this ground too.

### D. *Res Ipsa Loquitur* Does Not Apply

Great Northern does not directly respond to any of 5K Development's above arguments, but instead argues that the excavation project presents a viable claim of *res ipsa loquitur*. (ECF No. 59 at 2–3.) Putting aside whether it is appropriate for Great Northern to raise this theory at all given its apparent reliance on specific acts of negligence in its complaint (ECF No. 1),[9] I find that the doctrine does not apply in these circumstances. "The doctrine of res ipsa loquitur, literally the thing speaks for itself, permits a jury to infer negligence when no direct evidence of negligence has been introduced." *Barretta v. Otis Elevator Co.*, 242 Conn. 169, 173 (1997) (citation and internal quotation marks omitted). "Whether the doctrine of *res ipsa loquitur*

---

[9] *See White v. Mazda Motor of Am., Inc.*, 313 Conn. 610, 627 (2014) (collecting cases holding that plaintiff could not raise *res ipsa loquitur* claim in an opposition to summary judgment where plaintiff did not plead the theory in its complaint).

applies in a particular case is a question of law . . . ." *Giles v. New Haven*, 228 Conn. 441, 447 (1994).

The undisputed evidence demonstrates that the doctrine does not apply. "The doctrine of res ipsa loquitur applies only when two prerequisites are satisfied. First, the situation, condition or apparatus causing the injury must be such that in the ordinary course of events no injury would have occurred unless someone had been negligent. Second, at the time of the injury, both inspection and operation must have been in the control of the party charged with neglect." *Barretta*, 242 Conn. at 173–74. Although the evidence in the record does not clearly indicate whether the settling of the Jacob's home would have occurred unless someone had been negligent,[10] 5K Development has already shown that it had no control, oversight, or management of the excavation that allegedly caused the settling of the Jacob's home. *Cf. Giles*, 228 Conn. at 452–53 (affirming reversal of directed verdict under *res ipsa loquitur* doctrine where defendant was responsible for maintaining elevator that malfunctioned, notwithstanding that plaintiff operated the elevator at the time of the accident).

The case relied on by Great Northern, *Schurgast v. Schumann*, 156 Conn. 471 (1968), is clearly distinguishable on these grounds. (ECF No. 59 at 2; *see also* ECF No. 60 at 6.) In *Schurgast*, the Connecticut Supreme Court held that *res ipsa loquitur* applied in part because the

---

[10] Notably, although I do not consider it for purposes of this motion, Great Northern's exhibit suggests that this first element is not met because other factors that have nothing to do with 5K Development's negligence may have caused the collapse. (*See* ECF No. 59-2 at at 7–8 (identifying the "weight of the fireplace," a "water filtration system/water softening system" that flushed water through a drain system in the floor, and "rain . . . on the day prior to this event" as preliminary identified causes of the structural collapse).) *See Barretta*, 242 Conn. at 176 ("The doctrine of res ipsa loquitur does not extend to situations in which the plaintiff's *own* evidence provides *no* basis on which to conclude that the defendant has been negligent and, in fact, suggests as the only possible causes of the accident factual scenarios that do not arise from the defendant's negligence.").

stove that allegedly caused a house fire was in the exclusive control of the defendant and his employees. *See* 156 Conn. at 480–81. The defendant there directed his employees how to work, and his employees were the only individuals in the home in the morning of the fire. *Id.* at 476–77. There is no dispute here that DiFulvio did all of the excavation work at the time of the collapse, and unlike the employee-employer relationship in *Schurgast,* 5K Development had no contractual relationship with DiFulvio and did not direct or manage its work. (*See* Def.'s L.R. 56(a)1 Stmt. at ¶¶ 13, 21; Pirrone Aff. ¶¶ 13, 15, 17, 19.) Accordingly, no genuine dispute of material fact exists that 5K Development lacked control over the excavation, and so Great Northern could not recover under *res ipsa loquitur*.

## VI. Conclusion

For the reasons described above, 5K Development's motion for summary judgment is GRANTED. (ECF No. 51.) Because 5K Development's third-party/apportionment complaint against DiFulvio is conditioned on Great Northern's assertion of damages against 5K Development (ECF No. 56 at ¶¶ 11, 19), the third-party apportionment complaint is moot and so DiFulvio's motion for summary judgment is DENIED as moot. (ECF No. 54.) The Clerk is directed to enter final judgment in favor of defendant 5K Development and close the case.

IT IS SO ORDERED.

    /s/
Michael P. Shea, U.S.D.J.

Dated:      Hartford, Connecticut
               September 4, 2018